## Case No. 14,592.

### UNITED STATES v. BIDWELL.

[Hoff. Op. 54; Hoff. Dec. 5.]

District Court, N. D. California. Oct. 7, 1859.

MEXICAN LAND GRANT—SURVEY—CONTEST BY THIRD PERSON.

[1. A survey made by the surveyor general on the confirmation of a Mexican grant cannot be contested by a purchaser from the claimant of a tract which is within the location as made by the surveyor general, and which would be included within any survey that could be made.]

[2. A person alleging that any of the land included in a survey of a rancho is public land of the United States must urge his objection in the name of the United States, and through the district attorney.]

At law.

HOFFMAN, District Judge. The claim in this case having been confirmed, a survey was made by the surveyor general, and, on motion of the district attorney, returned to this court. On examining the surveys that officer was of opinion that no objections could properly be taken, and therefore declined to offer any opposition to the approval of it by the court. The claimant thereupon moved for a confirmation, which was opposed by Mr. Cornwall, who asked leave to intervene on behalf of other parties, and to contest the survey. The application is based on certain affidavits, which set forth the interests of the parties who desire to be admitted to intervene. These parties are one I. M. Speegle and one J. De Lancy, both of whom make affidavits stating their interests in the suit, and praying that they may be permitted to appear by Mr. Cornwall, as their attorney. Speegle states that in July, 1853, the claimant, John Bidwell, conveyed to him and one Chancy 160 acres of land, of which he is now in possession, and that the claimant also agreed to convey to him 160 acres more whenever he should obtain a patent for his land; but whether this last agreement was in writing he does not state. He further alleges that the survey is "erroneous," and that the affiant "is dissatisfied with it, and desires to contest it," etc. Henry Chancy, in an affidavit submitted on the part of the claimant, swears that the 160 acres of land was purchased by himself and Speegle, but that subsequently Speegle has conveyed to him (Chancy), by deed, all his interest in and to the said land, "since which time Speegle has not, to his knowledge, owned any land, and he has reason to believe has never purchased any land from Bidwell, or any other person, but that he and others are now living on the said grant, and, affiant has reason to believe, are using every means to resist and defeat, if possible, the survey and patent of said grant."

Without attempting to determine the disputed question of fact raised by these affidavits, it will be sufficient for our present purpose to consider the application of Speegle on the facts set forth in his own affidavit. It appears, then, that he is the owner of 160 acres, and has a contract for the purchase of 160 acres more. It is admitted that the tract purchased by him is within the location as made by the surveyor general, and would be included within any survey that could be made. He has, therefore, no interest whatsoever in this controversy, and no right to appear and contest this survey, even if it were permitted to subgrantees to do so in any case. The affidavit of John De Lancy sets forth that John Bidwell made a contract with Daniel De Lancy to convey to him one hundred and sixty acres of land whenever the patent should be issued, and that Daniel De Lancy conveyed his interest in this contract to the affiant, that he is in possession of said land, and that the same is included within the survey which has been made. It is not averred that the contract with Bidwell was in writing, and one W. W. Davis, in an affidavit exhibited by the claimant, swears that Daniel De Lancy "distinctly stated to him that he had no deed or other writing from Bidwell for the land." It appears, therefore, that De Lancy can have no interest in this controversy. If he has bought and owns the land, his rights are secured and protected by the location as made, for the land is included within it. If he does not own the land, and has merely contracted to buy it, then it is to his interest that a patent including it be issued, so that his contract may be carried into effect. In no view has he a right to be heard in this proceeding.

The foregoing statement of the interest of these parties in the controversy, as disclosed by themselves, is sufficient to show that they do not seek to be heard with a view of protecting any rights acquired by them from the original claimant, but that they are endeavoring to avail themselves of those rights to contest and delay the final location of this rancho, in the interest of other persons, and of themselves, who have settled upon it. This fact is positively sworn to in an affidavit presented by the claimants. A. H. Barber swears that "the said Speegle and others are making great efforts to induce persons to join with them to take possession of lands in the aforesaid grant, and are

---

[2] [From 22 Law Rep. 273.]

now actually taking possession of new locations in the very middle of said grant, and are holding public meetings and collecting funds to accomplish their ends. The lands of which they are taking possession have, to my knowledge, been considered since the year 1851 as the property of John Bidwell, and occupied by him, and are still occupied by him, as a part of the aforesaid grant." From the case, therefore, as presented by themselves, as well as from this affidavit, the nature of this application is evident. In this, as in all other cases, all persons who allege that any of the land included in a survey of a rancho is public land of the United States must urge their objections in the name of the United States, and through the district attorney. To that officer is committed the duty of seeing that no public land is improperly embraced within a survey of a private claim. When he has no objections to interpose, the settler cannot be permitted to intervene in the proceeding. When he settled upon the land, and, notwithstanding that it was claimed under a Mexican title, chose to assume it to be public land, he was aware that the United States would assert her rights through her proper officers, and that the judgment of the courts, declaring that the land was not public, but private, land, would be final and conclusive on the rights of the United States, and all claiming under them. When, therefore, the United States, through her officers, admits that the survey is properly made, or decline to make objections to it, no settler can be heard to contest it. The application is therefore denied, and a decree confirming the land, as surveyed and located by the surveyor general, to the claimant, must be entered.